IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CEDAR RUN ORTHODONTICS, P.A. d/b/a DEFELICE ORTHODONTICS,<br><br>Plaintiff,<br><br>v.<br><br>SENTINEL INSURANCE COMPANY, LTD.,[1]<br><br>Defendant. | Civil No. 20-08156 (RBK/SAK)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Sentinel Insurance Company's Motion for Judgment on the Pleadings (ECF No. 22). The reasons set forth in the Opinion below, Defendant's Motion is **GRANTED**.

**I.    Background**

Plaintiff Cedar Run Orthodontics ("Plaintiff" or "Cedar Run") owns and operates a dental practice in West Creek and Hammonton, New Jersey. (ECF No. 11, Am. Compl. ¶ 1). Defendant Sentinel Insurance Company ("Defendant" or "Sentinel") issued an "all-risk" insurance policy, number 16 SBA NO0420 (ECF No. 11-1, Ex. 1 "Policy"), to Plaintiff for the period of August 29, 2019 to August 29, 2020. (Am. Compl. ¶¶ 3, 19–20). The "Special Property Coverage Form" portion of the Policy provides for (1) "Business Income" coverage, which covers "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the

---

[1] Per the parties' stipulation and agreement, Plaintiff's claims against Defendant Hartford Financial Services Group have been dismissed without prejudice. (ECF No. 13).

1

'period of restoration'"; (2) "Extra Expense" coverage, which covers expenses "incur[red] during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage" at a covered property; and (3) "Civil Authority" coverage, which covers "the actual loss of Business Income you sustain when access to your [property] is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss…." (Policy *40–41[2]); (Am. Compl. ¶¶ 4–5, 29–34). However, the Policy also contains a provision titled "Limited Fungi, Bacteria or Virus Coverage" ("Virus Exclusion") that excludes coverage under the Policy for loss or damage resulting from viral activity. (Policy *140–43). The Virus Exclusion provides, in pertinent part:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of "fungi", wet rot, dry rot, bacteria or virus. … This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

(*Id.*)[3] The Virus Exclusion explicitly states that it modifies coverage under the Special Property Coverage Form. (*Id.*)

On March 9, 2020, Governor Phil Murphy issued an executive order declaring a state of emergency due to the spread of the COVID-19 virus in New Jersey. (Am. Compl. ¶ 63). On or about March 18, 2020, Plaintiff was forced to suspend its operations "as a direct result of the COVID-19 pandemic and closure [o]orders[.]" (*Id.* ¶¶ 62–75, 102). Plaintiff contends that "[a]s a direct result of the COVID-19 pandemic and the Closure Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses…." (*Id.* ¶ 110). Plaintiff submitted a claim under the Policy to Defendant for these losses,

---

[2] An asterisk indicates that the page number cited refers to the PDF pagination on the ECF header.
[3] There is no indication, nor does Plaintiff allege, that any exceptions to the Virus Exclusion apply here. (Def. Moving Br. 4 n.2); *see generally* (Am. Compl.).

2

On July 2, 2020, Plaintiff filed a complaint against Defendant in this Court based on diversity jurisdiction under 28 U.S.C. § 1332, (ECF No. 1, Compl. ¶ 14), which Plaintiff amended on September 14, 2020, (ECF No. 11). In the Amended Complaint, Cedar Run pleads a breach of contract cause of action based on Defendant's denial of Plaintiff's claim under the Policy. (Am. Compl. ¶ 124–34). Plaintiff also seeks a declaration that Defendant is obligated to provide coverage for Plaintiff's losses under the Policy, the Virus Exclusion violates public policy, and the Virus Exclusion is unenforceable under a theory of regulatory estoppel. (*Id.* at ¶ 116–23).

On March 5, 2021, Defendant moved for judgment on the pleadings. (ECF No. 22, "Def. Moving Br."). Plaintiff responded in opposition to Defendant's motion on March 22, 2021. (ECF No. 23, "Pl. Opp'n Mem."). Defendant filed a reply on April 16, 2021. (ECF No. 28, "Def. Reply").

## II. Legal Standard

### a. Standard on a Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, the moving party clearly establishes that no material issues of fact remain and the movant is entitled to judgment as a matter of law. *See DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). A motion for judgment on the pleadings is evaluated under the same standards as a motion to dismiss pursuant to Rule 12(b)(6). *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). The court must accept all allegations in the complaint as true and must draw all inferences in favor of the nonmoving party. *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). As with a Rule 12(b)(6) motion, "the factual allegations set forth in a complaint 'must be enough to raise a right to relief above the speculative level.'" *JRJ Hosp., Inc. v. Twin City Fire Ins. Co.*, No. 20-13095, 2021 WL

3561356, at *3 (D.N.J. Aug. 12, 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[I]n deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" *Wolfington*, 935 F.3d at 195 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

### b. New Jersey Law on Insurance Policy Interpretation

A court exercising diversity jurisdiction must apply state substantive law to an insurance dispute. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under New Jersey law, the interpretation of an insurance policy is a "question of law." *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 210 N.J. 597, 605 (2012). "[T]he words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001). Where the terms of the policy are ambiguous, the ambiguity is ordinarily resolved in favor of the insured. *See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 179 N.J. 87 (2004). Where the language of the policy is clear and unambiguous, however, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 N.J. Super. 409, 416 (N.J. Super. Ct. App. Div. 1994). In such cases, the court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Continental Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 178 N.J. 286 (2004)).

Exclusions within an insurance policy are narrowly interpreted. *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997). "Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010) (quoting *Chunmuang*, 151 N.J. at 95). "If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a

4

strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi v. Chubb Ins. Co.*, 121 N.J. 530, 537 (1990)).

## III. Discussion

### a. The Virus Exclusion

Sentinel contends that it is entitled to a judgment on the pleadings because the Virus Exclusion unambiguously precludes recovery for business losses caused by the COVID-19 virus, including losses resulting from COVID-19-related closure orders.[3] (Def. Moving Br. 7–17). Plaintiff asserts that the Virus Exclusion is ambiguous and therefore must be interpreted in Plaintiff's favor. (Pl. Opp'n Mem. 8–11). The Court agrees with Sentinel.

There is near unanimous agreement in this district that virus exclusion provisions—identical or substantially similar to the Virus Exclusion here—apply to bar coverage for claims of losses resulting from the COVID-19 pandemic and associated civil authority orders. *ABC Children's Dentistry, LLC v. Hartford Ins. Co.*, No. 20-10044, 2021 WL 4272767, at *4 (D.N.J. Sept. 21, 2021) (collecting cases); *Z Bus. Prototypes LLC v. Twin City Fire Ins. Co.*, No. 20-10075, 2021 WL 3486897, at *2 (D.N.J. Aug. 9, 2021); *Arrowhead Health & Racquet Club, LLC v. Twin City Fire Ins. Co.*, No. 20-08968, 2021 WL 2525739, at *3 (D.N.J. June 21, 2021) (collecting cases); *Eye Care Ctr. of New Jersey, PA v. Twin City Fire Ins. Co.*, 522 F. Supp. 3d 72 (D.N.J. 2021); *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74 (D.N.J. 2020).

In fact, two courts in this district have ruled on this same Virus Exclusion in policies issued by Sentinel. *Salon Dare, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-9616, 2021 WL 3472648, at *2 (D.N.J. Aug. 6, 2021) (granting Sentinel's motion for judgment on the pleadings); *Stern &*

---

[3] The Court takes judicial notice of the fact that COVID-19 is a virus as a fact generally known and not subject to reasonable dispute. Fed. R. Evid. 201(b); *see Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*, 519 F. Supp. 3d 178, 184 (D.N.J. 2021) (taking judicial notice of the fact that COVID-19 is a virus).

5

*Eisenberg, P.C. v. Sentinel Ins. Co., Ltd.*, No. 20-11277, --- F. Supp. 3d ----, 2021 WL 1422860, at *5 (D.N.J. Apr. 14, 2021) (granting Sentinel's motion to dismiss pursuant to Rule 12(b)(6)). Both courts rejected each plaintiff's respective contention that the Virus Exclusion was ambiguous, instead concluding that the provision plainly precluded coverage for COVID-19-related losses. *Stern & Eisenberg, P.C.*, 2021 WL 1422860, at *5 ("[T]he language is explicit and plainly excludes from coverage any loss 'caused directly or indirectly by ... [the p]resence, growth, proliferation, spread or any activity of ... virus.'" (alterations in original)); *Salon Dare, Inc.*, 2021 WL 3472648, at *2 ("[T]he Court again reaches the same conclusion and finds that the Virus Exclusion clearly and unambiguously bars coverage for [Plaintiff's] claims.").

The Court sees no reason to depart from this overwhelming consensus and override the clear language of the Virus Exclusion.[4] Sentinel's Virus Exclusion unambiguously bars Plaintiff's claim for losses caused by the COVID-19 virus and, as in similar cases, "Plaintiff offers no compelling argument that the plain language of the Virus Exclusion is susceptible to two reasonable interpretations." *Stern & Eisenberg, P.C.*, 2021 WL 1422860, at *5.

The Virus Exclusion also contains an anti-concurrent clause, (Policy *140 ("Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss[.]")), which precludes coverage for losses resulting from COVID-related civil authority orders. As this Court previously explained when examining an identical anti-concurrent clause:

> The anti-concurrent causation clause specifically states that loss caused directly *or indirectly* by a virus is excluded. This is true regardless of any other

---

[4] Because the Virus Exclusion bars coverage of Plaintiff's claims, the Court need not determine whether Plaintiff suffered direct physical loss or if its claim is a covered cause of loss within the meaning of the Policy. *See N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 79 (D.N.J. 2020) ("[T]he Court finds it unnecessary to decide whether Plaintiff's claim resulted from direct physical loss or damage because the Court finds that the Virus Exclusion plainly applies here, barring coverage."); *see Arrowhead Health & Racquet Club, LLC*, 2021 WL 2525739, at *2 n.1.

event *in any other sequence* that contributes to the loss. There is no doubt that COVID-19, a virus, caused Governor Murphy to issue the Executive Order mandating closure of Plaintiff's restaurant. Therefore, COVID-19 is still a cause of the closure because the Virus Exclusion *specifically provides for such indirect causation.*

*N&S Rest. LLC*, 499 F. Supp. 3d at 78 (internal citations omitted) (emphasis in original); *see JRJ Hosp., Inc. v. Twin City Fire Ins. Co.*, No. 20-13095, 2021 WL 3561356, at *6 (D.N.J. Aug. 12, 2021) (considering an identical anti-concurrent clause and concluding "[b]ecause the Executive Orders were issued by Governor Murphy in response to the COVID-19 virus and pandemic, the COVID-19 virus was a contributing cause of Plaintiffs' losses. As such, the Policies do not cover any claim for losses caused by the COVID-19 virus and the ensuing Executive Orders."); *cf. Stern & Eisenberg, P.C.*, 2021 WL 1422860, at *5 ("Any losses that Plaintiff allegedly suffered were caused either by COVID-19 itself (a virus) or by the executive orders and declarations that forced Plaintiff to suspend its operations[,]" which "were themselves caused by the virus."). Therefore, Plaintiff is not entitled to coverage under the Policy for losses caused by COVID-related civil authority orders. [5]

### b. Regulatory Estoppel & Public Policy

---

[5] Plaintiff puts forth two additional arguments as to why the Virus Exclusion should not bar its claims here. Neither is persuasive. First, Plaintiff urges the Court to distinguish between a virus and a pandemic, asserting that "Cedar Run's losses largely result from the pandemic and consequences of COVID-19, distinguishing it from the virus exclusion in the policy." Pl. Opp'n Mem. 8–9. We agree with our sister courts that have found "the Virus Exclusion need not explicitly refer to a pandemic to be applicable." *Sweetberry Holdings LLC v. Twin City Fire Ins. Co.*, No. 20-08200, 2021 WL 3030269, at *6 (D.N.J. July 19, 2021); *Z Bus. Prototypes LLC*, 2021 WL 3486897, at *4. The Virus Exclusion unquestionably applies to Plaintiff's COVID-19 claims in the instant matter.

Second, Plaintiff's contention that New Jersey law allows for consideration of the reasonable expectations of the insured is unavailing. (Pl. Opp'n Mem. 31–33). The Virus Exclusion is not ambiguous, and Plaintiff identifies no exceptional circumstances to justify discarding the plain terms of the Policy. *See ABC Children's Dentistry*, 2021 WL 4272767, at *6 (rejecting a similar "reasonable expectations" argument because the language of the insurance policy at issue was clear and the pandemic did not provide the exceptional circumstances necessary "to override the Virus Exclusion's unambiguous language"); *Mac Property Group LLC v. Selective Fire and Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at *9 (N.J. Super. L. Nov. 05, 2020) ("Because the court finds the policy language, the virus exclusion, to be clear and unambiguous, any expectation of coverage by the insureds is not reasonable.").

Plaintiff alleges that "Defendant should be estopped from enforcing the virus exclusion" under the theory of regulatory estoppel "as well as general public policy." (Am. Compl. ¶ 87–101). To support this claim, Plaintiff cites to two representations made in 2006 by two insurance industry trade groups, the Insurance Services Office ("ISO") and American Association of Insurance Services ("AAIS"). (Am. Compl. ¶ 87–101). Plaintiff argues that these groups "misrepresent[ed] to the state regulators that the Virus Exclusion would not change the scope of coverage," when in fact "courts had repeatedly found that property insurance policies covered claims involving disease-causing agents and had held ... that any condition making it impossible to use property for its intended use constituted 'physical loss or damage to such property.'" (*Id.* at ¶ 93, 96); (Pl. Opp'n Mem. 11–17). Plaintiff's regulatory estoppel and public policy arguments are unavailing.

To plead a claim for regulatory estoppel, a plaintiff must allege an inconsistency between the defendant's interpretation of an exclusionary provision used to deny coverage and the interpretation the defendant previously advanced to state regulators when seeking approval for that provision. *See Delaware Valley Plumbing Supply, Inc*, 519 F. Supp. 3d at 185–86; *Benamax Ice, LLC v. Merch. Mut. Ins. Co.*, No. 20-8069, 2021 WL 1171633, at *6 (D.N.J. Mar. 29, 2021) (citing *Morton Int'l v. General Accident Ins. Co.*, 134 N.J. 1 (1993)).

Plaintiff fails to demonstrate any such inconsistency here.[6] Courts in this district have rejected virtually identical regulatory estoppel claims regarding virus exclusions in the COVID-

---

[6] It is not clear to the Court that Plaintiff has plead facts sufficient to establish that the ISO and AAIS statements to regulators in 2006 were misleading or false. Plaintiff points to no legal authority to support its assertion that, prior to 2006, courts had "repeatedly found" insurance policies covered claims for disease-causing agents or that "any condition making it impossible to use property for its intended use constituted 'physical loss or damage to such property.'" (Am. Compl. ¶ 93). The Court notes that Plaintiff's regulatory estoppel allegations here are identical to those presented, and rejected, in *Dezine Six, LLC v. Fitchburg Mut. Ins. Co.*, No. 07964, 2021 WL 1138146, at *6 (D.N.J. Mar. 25, 2021). In *Dezine Six, LLC*, Judge Martinotti found no New Jersey legal authority stating that "the inability to use property for its intended use caused by a disease-causing agent constituted 'physical loss or damage to such property'" at or prior to the time the ISO and AAIS representations were made to state regulators. *Id.* As such, Judge Martinotti concluded "the doctrine of regulatory estoppel is not triggered here." *Id.* Since the parties have not briefed this issue, however, the Court will not discuss it further.

19 context for this reason. *E.g., Blue Devil LLC v. ACE Prop. & Cas. Ins. Co.*, No. 20-12480, 2021 WL 3930710, at *6–7 (D.N.J. Sept. 2, 2021) (finding no inconsistency between the 2006 ISO circular and the defendant's position that the virus exclusion bars coverage); *Carpe Diem Spa, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-14860, 2021 WL 1153171, at *3 (D.N.J. Mar. 26, 2021) ("[T]he insurers' representations cited by Plaintiff do not contradict Defendant's position in this case. Therefore, Plaintiff's regulatory estoppel argument fails.").[7] In one such case, *Delaware Valley Plumbing Supply, Inc.*, the plaintiff put forth a regulatory estoppel argument based, in part, on the same the ISO representation at issue here. Unpersuaded, Judge Hillman explained:

> The industry filings cited by Plaintiff make clear that the Virus Exclusion clause would bar coverage for loss or damages caused by a virus like COVID-19. Plaintiff's opposition brief therefore entirely fails to demonstrate or adequately allege any inconsistency between this reasoning advanced to justify the approval of such Virus Exclusion clauses and the interpretation of the Virus Exclusion clause relied upon by Defendant in this case. Accordingly, Plaintiff's regulatory estoppel argument fails[.]

519 F. Supp. 3d at 186. The same reasoning applies to this case. Plaintiff fails to allege in its Amended Complaint any inconsistency between the industry's interpretation of virus exclusion provisions advanced to regulators and the interpretation advanced by Sentinel in the instant litigation. Plaintiff's regulatory estoppel claim must fail.[8]

As to Plaintiff's claim that the Virus Exclusion violates "general public policy", the Court finds no evidence to support this assertion. Plaintiff does not allege any specific facts to demonstrate that the Virus Exclusion is violative of New Jersey public policy. Moreover, courts in this district confronted with more robust public policy arguments have concluded that virus

---

[7] Numerous other courts within the Third Circuit have reached the same conclusion when considering these purported industry misrepresentations. *See, e.g., 1800 Farragut Inc. v. Utica First Ins. Co.*, No. 20-3449, 2021 WL 4243435, at *5–7 (E.D. Pa. Sept. 16, 2021); *Moody v. Hartford Fin. Grp., Inc.*, 513 F. Supp. 3d 496, 513 (E.D. Pa. 2021); *Paul Glat MD, P.C. v. Nationwide Mut. Ins. Co.*, No. 20-5271, --- F. Supp. 3d ----, 2021 WL 1210000, at *9 (E.D. Pa. Mar. 31, 2021); *Hums. & Res., LLC v. Firstline Nat'l Ins. Co.*, 512 F. Supp. 3d 588, 601–02 (E.D. Pa. 2021); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, 499 F. Supp. 3d 95, 101 (E.D. Pa. 2020).
[8] The Court concludes that discovery is not necessary on this issue.

exclusion provisions do not run afoul of New Jersey public policy. *See Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-08595, 2021 WL 1138141, at *8 (D.N.J. Mar. 25, 2021); *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-8393, 2021 WL 486917, at *8 (D.N.J. Feb. 10, 2021).

### c. Plaintiff States No Claims for Relief

Because the Virus Exclusion is enforceable and unambiguously bars coverage for Plaintiff's claim, Sentinel did not breach its contract when it denied Plaintiff's claim in this instance. Plaintiff is therefore not entitled to declaratory relief. "'Absent an actual withholding of benefits due, there is no breach of contract,' and Plaintiffs are not entitled to a declaration that their losses are covered under the policy." *Delaware Valley Plumbing Supply, Inc.*, 519 F. Supp. 3d at 186 (citing *N&S Restaurant LLC*, 499 F. Supp. 3d at 81).

Accordingly, Defendant' Motion for Judgment on the Pleadings must be granted. The Court has great sympathy for Plaintiff and other businesses that have sustained heavy losses during the pandemic. But, as we have previously opined, "the Court cannot deviate from this finding without in effect re-writing the Policy." *N&S Restaurant LLC*, 499 F. Supp. 3d at 81.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings (ECF No. 22) is **GRANTED.** An accompanying Order shall issue.

Dated: 11/01/2021

ROBERT B. KUGLER
United States District Judge